**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1560-24

HOWARD ZLOTKIN,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION AND
ANNUITY FUND,

     Respondent-Respondent.

_____

Submitted January 28, 2026 – Decided March 3, 2026
Motion to Vacate Motion for Relief from Judgment granted.
Resubmitted April 23, 2026 – Decided April 23, 2026

Before Judges Smith and Berdote Byrne.

On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury.

Howard Zlotkin, self-represented appellant.

Jennifer Davenport, Acting Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant

Attorney General, of counsel; Payal Y. Ved, Deputy Attorney General, on the brief).

PER CURIAM

On March 3, 2026, we issued an opinion reversing the final administrative decision of the Board of Trustees, Teachers' Pension and Annuity Fund (the Board), which had imposed a ten-percent forfeiture of petitioner Howard Zlotkin's monthly pension benefits, and reinstating the determination of the Administrative Law Judge (ALJ), who had recommended a lesser forfeiture calculated as sixty-four days of lost service. Our reversal relied upon the absence of any evidence in the record that the Board had requested an extension of the forty-five-day statutory timeframe prescribed by N.J.S.A. 52:14B-10(c) before voting to reject the ALJ's decision. Because neither party's appendix reflected such a request, we concluded the ALJ's determination was deemed adopted by operation of law.

The Board has since moved to vacate that decision, representing it did in fact submit a timely request for an extension and acted within the forty-five-day statutory timeframe, and has filed an updated appendix containing the order granting the extension. The omission of this document from both parties' appendices caused our March 3, 2026 decision to rest on an incomplete record. The order granting the extension establishes the Board acted within the statutory

2

timeframe, and we therefore grant the Board's motion to vacate our March 3, 2026 opinion and reinstate the appeal.

Turning to the merits of the appeal, we conclude the Board's decision to impose a ten-percent forfeiture of petitioner's monthly pension benefits was not arbitrary, capricious, or unreasonable, and was supported by sufficient evidence in the record.

## I.

Zlotkin was employed as a science teacher by Jersey City Public Schools and held teaching certificates for grades K-8, biological science, and earth science for twenty years. On April 28, 2021, Zlotkin taught a high school "Landscape and Design" class via Zoom. During the session, he asked students to formulate and present to him a hypothesis, which he believed would encourage student engagement he perceived was lacking during the COVID-19 pandemic. The students' hypothesis was that all white people are privileged. Zlotkin reacted poorly, attempting to explain why he felt the statement was inaccurate, hurtful, and disrespectful. For about two minutes, Zlotkin spoke to his students heatedly about political and racial subjects, espousing his views. The specific remarks made by Zlotkin were as follows:

> Because I've been working for twenty years, and I don't
> really care who you are or what color you are. I don't

A-1560-24

care where you came from. I worked three jobs every f–ing day of my life and you know what I have one kid, not seven because I can't afford seven.

. . . .

I lost a house because I was out of work, I worked two careers. I reinvented myself. I never gave up and I don't give up, but I hear people whining and crying about Black Lives Matter, but George Floyd was a f–ing criminal and he got arrested and he got killed because he wouldn't comply, and the bottom line is we make him a f–ing hero. He's not a hero, he's like a criminal just like f–ing Tawana Brawley and you know what, Tawana Brawley lied, and ruined people's lives and you guys emulate people . . . that just are f–ing wrong, that are criminals, and you're making them right because they're black or because they got a bad story. Everybody's got a bad story. Half the planet's starving to death and they're not whining.

. . . .

But the ladies that run Black Lives Matter own five houses and are multimillionaires and they don't give a s–t. They're making money off people and we're fighting each other. We're gonna fall apart, and I'll tell you something right now, that's not equity. Equity is everybody matters – not just one person, not just the other.

. . . .

And I'll tell you something, I ain't f–ing privileged, I come to work. I haven't gotten paid by my black vice principal who thinks I'm f–ing privileged too.

A-1560-24

A student then responded to Zlotkin's comments by telling Zlotkin he was privileged. In turn, Zlotkin loudly retorted, "F–k you," and held his middle finger up to the camera, ending the discussion. At least one student recorded Zlotkin's remarks and submitted the video to school administrators.

The following day Zlotkin was notified of his immediate removal from his duties as a science teacher. He submitted a resignation letter effective May 21, 2021. The State Board of Examiners (Examiners) subsequently initiated review proceedings and issued an order to show cause concerning the possible revocation or suspension of Zlotkin's teaching certificates, finding material facts in dispute and referring the matter to the Office of Administrative Law (OAL) for a hearing as a contested case.

An ALJ issued an initial decision granting the Examiners' motion for summary decision, acknowledging arguments in favor of revocation, but ultimately recognizing mitigating factors and concluding Zlotkin's conduct, though improper, did not warrant complete revocation. The ALJ instead determined that a two-year suspension of his teaching certificates was warranted. The Examiners accepted this recommendation and ordered a two-year suspension of Zlotkin's certificates.

A-1560-24

The Board performed an analysis pursuant to N.J.S.A. 43:1-3 and Uricoli v. Board of Trustees, Police & Firemen's Retirement System, 91 N.J. 62 (1982). It found Zlotkin's conduct to be "grave and substantial, directly related to [his] employment, and involved a high degree of guilt and culpability, as the misconduct occurred during a class in front of [his] students." The Board also found Zlotkin's "misconduct was motivated by the humiliation of [his] students." Consequently, after addressing the eleven Uricoli factors, the Board ordered a forfeiture of ten percent of Zlotkin's monthly pension allowance.

Zlotkin appealed and the matter was transferred to the OAL for a hearing as a contested case. The ALJ issued an initial determination recommending a reduced forfeiture, calculated as sixty-four days of lost service, representing the period from the date of the incident (April 28, 2021) to Zlotkin's retirement date (July 1, 2021).

In its final administrative decision, the Board adopted some factual findings from the administrative proceedings, but modified others. The Board also rejected the ALJ's recommendation of a reduced forfeiture, explaining forfeiture from the date of misconduct would result in a minimal reduction and did not reflect the extent and nature of the misconduct as well as the negative

6

attention brought to the school district. The Board then imposed a ten-percent forfeiture of Zlotkin's monthly pension benefits. This appeal follows.

## II.

Our review of an administrative agency's determination is limited. M.R. v. N.J. Dep't of Corr., 261 N.J. 322, 337 (2025). We will sustain a board's decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). Our review is guided by three inquiries: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial, credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency "clearly erred in reaching" its conclusion. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)). We are not bound by an agency's statutory interpretation or other legal determinations, which we review de novo. Russo, 206 N.J. at 27 (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

N.J.S.A. 43:1-3 governs the forfeiture of retirement benefits for misconduct occurring during public service and codifies the principles

established in <u>Uricoli</u>.  <u>See L</u>. 1995, <u>c</u>. 408; <u>Assemb. State Gov. Comm. Statement to A. No. 676</u> (Apr. 20, 1994) (stating that the bill codifies the "essence" of <u>Uricoli</u>).  <u>Uricoli</u> involved a police chief who applied for accidental disability benefits.  91 N.J. at 65.  After twenty-three years of service, he was convicted of "malfeasance in office" for a "ticket-fixing incident" in which he "illegally disposed of a careless driving ticket . . . issued to the son of a 'near and dear friend.'"  <u>Ibid.</u>

In <u>Uricoli</u>, our Supreme Court cautioned "honorable service is an implicit requirement of every public pension statute, whether or not this conditional term appears in the particular statute" and honorable service is required "without regard to whether the retirement is based on disability, age, or length of service." <u>Id.</u> at 66.  The Court then decided how a public employee's misconduct should affect their pension rights.  <u>Id.</u> at 77-78.  The Court rejected a rule that any misconduct should "automatically" result in "absolute forfeiture" of a public employee's pension.  <u>Id.</u> at 77.  Instead, the Court emphasized "flexibility and the application of equitable considerations" and devised an eleven-factor balancing test, which included the following:

> (1) the employee's length of service; (2) the basis for retirement, i.e., age, service, disability, etc.; (3) the extent to which the employee's pension has vested; (4) the duties of the particular employment; (5) the

employee's public employment history and record; (6) the employee's other public employment and service; (7) the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated; (8) the relationship between the misconduct and the employee's public duties; (9) the quality of moral turpitude or the degree of guilt and culpability, including the employee's motives and reasons, personal gain, and the like; (10) the availability and adequacy of other penal sanctions; and (11) other personal circumstances relating to the employee bearing upon the justness of forfeiture.

[Id. at 77-78.]

In applying these factors to Uricoli's case, the Court held total forfeiture was not warranted. Id. at 78. The Court noted the wrongfulness of Uricoli's ticket-fixing incident and its "direct and actual" relationship to his job duties. Id. at 79. But the Court also weighed Uricoli's "[twenty] full years of honorable service" and the fact the conduct was not "pervasive or chronic," and noted there was no "personal gain" or "indication of venality." Ibid. Finally, the Court concluded "adequate penal sanctions" had already been applied, including Uricoli's termination, conviction, and sentence. Ibid.

In Corvelli v. Board of Trustees, Police and Firemen's Retirement System, the Court subsequently clarified that misconduct resulting in forfeiture need not be criminal. 130 N.J. 539, 552 (1992). The Court stated:

9

> Although Uricoli had been convicted of a crime, nowhere does our opinion in his case state that only criminal acts may constitute dishonorable service deserving of forfeiture. The term 'honorable service' as used in <u>Uricoli</u> and other opinions is sufficiently generic to encompass a broad range of misconduct bearing on the forfeiture decision, including but not limited to criminal conviction.
>
> [<u>Ibid.</u>]

<u>Uricoli</u>'s balancing test, codified at N.J.S.A. 43:1-3, authorizes the respective boards of the State's pension systems to weigh the eleven factors and, if necessary, order total or partial forfeiture of an employee's pension or retirement benefits. N.J.S.A. 43:1-3(b) to (c).

Zlotkin contends the Board neglected to provide a clear or calculated basis for the ten-percent forfeiture of his monthly pension benefits, asserting the Board imposed the penalty without "provid[ing] any written statutory analysis." We disagree, as the Board thoroughly addressed the eleven <u>Uricoli</u> factors when making its decision. In its written decision, the Board addressed each factor as follows:

> **1. The member's length of service;**
> Howard Zlotkin has 20 years and 3 months of service credit in the [Teacher's Pension and Annuity Fund (TPAF)];
>
> **2. The basis of retirement;**

At its meeting on September 2, 2021, the Board approved Howard Zlotkin's application for Service retirement effective July 1, 2021 and he continues to collect retirement benefits. At the time of its approval, the Board was unaware of any action against Howard Zlotkin's teaching certificates;

**3. The extent to which the member's pension has vested;**
Howard Zlotkin is vested in the TPAF and was 61 years of age as of his last pension contribution;

**4. The duties of the particular member;**
Howard Zlotkin held the position of Teacher;

**5. The member's public employment history and record covered under the retirement system;**
Howard Zlotkin was enrolled in the TPAF effective March 1, 2001, as a result of his employment with Jersey City as a Teacher. He remained with this employer and in this position at the time of his resignation;

**6. Any other public employment;**
Howard Zlotkin was also a member of the Public Employees' Retirement System (PERS) as a result of his employment with New Jersey City University as an Adjunct. He remained with this employer until December 7, 2019[,] at which time, he had a total of 13 years and 5 months of membership service. The PERS Board approved his Service retirement effective March 1, 2022;

**7. The nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated;**

11

Howard Zlotkin was removed from his regularly assigned duties pending the outcome of an investigation of an incident that occurred on April 28, 2021.

On April 28, 2021, while teaching a class via Zoom, Howard Zlotkin engaged in a heated argument with a student. During that exchange, he discussed racially charged topics, espoused his personal views, used profanity and gave a student the middle finger. Howard Zlotkin used racially insensitive language toward a student who referred to him as "privileged" and he also made derogatory comments about "Black Lives Matter." The record indicates that he cursed at his students the following day. Prior to the conclusion of the investigation, Howard Zlotkin submitted his resignation;

**8. The relationship between the misconduct and the member's public duties;**
Direct; Mr. Zlotkin's misconduct occurred during class in front of students;

**9. The quality of moral turpitude or the degree of guilt or culpability, including the member's motives and reasons, personal gain and similar considerations;**
The Board found that Mr. Zlotkin's misconduct involved a high degree of guilt and culpability and that his motivation was to humiliate the students. However, the Board was unable to determine whether there was any personal gain;

**10. The availability and adequacy of other penal sanctions;**
Jersey City notified the New Jersey State Board of Examiners (Board of Examiners) of Howard Zlotkin's conduct. The Board of Examiners issued Howard Zlotkin an Order to Show Cause (Order) for possible

12

action against his teaching certificates. Howard Zlotkin responded to the Order and his case was transferred to the Office of Administrative Law for a hearing.

The Board of Examiners requested and was granted summary decision. An Initial Decision was issued and the Administrative Law Judge (ALJ) concluded that Howard Zlotkin's actions constituted conduct unbecoming a teacher and the Board of Examiners charge was sustained. The ALJ recommended a two-year suspension of Howard Zlotkin's teaching certificates effective May 18, 2023.

On May 18, 2023, the Board of Examiners adopted the Initial Decision and ordered a two-year suspension of his teaching certificates. Howard Zlotkin appealed the suspension effective date and contended that the suspension should take effect retroactively or April 28, 2021, the date of his suspension from Jersey City. However, the Board of Examiners indicated that the law only provides for a prospective suspension of certificates. Ultimately, Howard [Zlotkin] agreed to the Board of Examiner's two-year suspension of his certificates on a prospective basis. On September 14, 2023, the New Jersey Commission[er] of Education issued its final decision and affirmed the decision of the Board of Examiner's suspending Howard Zlotkin's certificates for two years, effective May 18, 2023;

**11. Other personal circumstances relating to the member which bear upon the justness of forfeiture;** The Board noted the personal appearance and statements of Mr. Zlotkin. It also noted Mr. Zlotkin['s] statements that the medication he was taking resulted in his behavior in front of the students.

The Board found that [Zlotkin's] misconduct was grave and substantial, directly related to [his] employment,

13

and involved a high degree of guilt and culpability, as the misconduct occurred during a class in front of [his] students. Further, the Board found that [his] misconduct was motivated by the humiliation of [his] students.

After considering the aforementioned statutory factors, the Board determined that in accordance with N.J.S.A. 43:1-3 and N.J.A.C. 17:1-6.1, a partial forfeiture of [Zlotkin's] retirement benefit was appropriate. The Board imposed a forfeiture of 10% of [his] monthly pension allowance. The Board found that after balancing the statutory factors and its authority under the regulation, this reduction was calculated to impose a reasonable forfeiture that reflects the serious nature and gravity of [his] misconduct.

The foregoing analysis demonstrates the Board conducted a thorough and individualized evaluation of Zlotkin's conduct and appropriately weighed the Uricoli factors in determining a ten-percent reduction in his monthly retirement allowance was warranted. See N.J.A.C. 17:1-6.1(c) ("In circumstances where the termination of pension rights as of the date of the misconduct results in no reduction, or a minimal reduction of pension or retirement benefits, or in an excessive forfeiture, as compared to the nature and extent of the misconduct and the years of honorable service, the Board may, in its sole discretion, provide a more equitable relief."); see also N.J.A.C. 17:1-6.1(c)(4) ("Alternate methods available to the Board when a forfeiture of service renders an unreasonable or unjust result include, but are not limited to: . . . "[r]eduction in monthly

14                                                                              A-1560-24

retirement allowance."). Therefore, Zlotkin's argument the Board "failed to provide any written statutory analysis" is belied by the record.

Zlotkin also contends the Board disregarded substantial evidence in favor of mitigation, specifically his twenty years of discipline-free service and the isolated nature of the incident. This argument, too, lacks merit. The Board explicitly acknowledged Zlotkin's twenty years and three months of service pursuant to factor one and expressly recognized the misconduct constituted a single incident pursuant to factor seven. That the Board nonetheless imposed a ten-percent forfeiture does not mean it disregarded those mitigating circumstances. Rather, the record reflects the Board weighed them against the gravity of the misconduct and found the balance warranted the penalty imposed.

Considering all the circumstances, the Board did not act arbitrarily and capriciously in weighing the factors. It was reasonable to conclude the nature and gravity of Zlotkin's conduct warranted a ten-percent reduction of his retirement benefits. Our role is not to substitute our judgment for that of the Board but only to conclude whether its decision follows the law, is supported by substantial evidence, and is reasonable. In re Carter, 191 N.J. 474, 483 (2007).

The Board's decision is affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division